<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

> **FILED**
>
> JAMES J. WALDRON, CLERK
>
> [March 31, 2010]
>
> U.S. BANKRUPTCY COURT
> CAMDEN, N.J.
> BY: s/ Elizabeth Grassia, Deputy

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | |
| CHRISTOPHER R. SHAFER, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | CASE NO.: 07-14206 (GMB) |
| | : | |
| JUAN RIOS and ELIZABETH RIOS, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | ADVERSARY NO. 08-1004 (GMB) |
| v. | : | |
| | : | |
| CHRISTOPHER R. SHAFER, | : | |
| | : | <u>MEMORANDUM OPINION</u> |
| Defendant. | : | |

<u>APPEARANCES</u>:

Mr. Christopher R. Shafer
3199 Federal Street
Camden, NJ 08105
Appearing <u>Pro Se</u>

Robert Braverman, Esquire
Law Office of Robert Braverman, L.L.C.
Suite 500
800 N. Kings Highway
Cherry Hill, NJ 08034
Counsel for Plaintiffs Juan and Elizabeth Rios

Patrick J. Grimes, Esquire
Grimes & Grimes, L.L.C.
1230 Brace Road
Cherry Hill, NJ 08034
Counsel for Plaintiffs Juan and Elizabeth Rios

Before the Court is an adversary proceeding filed by Juan and Elizabeth Rios

("Plaintiffs") against Christopher R. Shafer ("Debtor") pursuant to 11 U.S.C. §§ 727 and 523.

Specifically, the Plaintiffs allege that the Debtor should not receive a discharge of certain debts

pursuant §§ 523(a)(2) and (4) and object to the Debtor's discharge pursuant to §§ 727(a)(2)(A)

and (a)(3)-(6).

## I.    JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the Standing

Order of the United States District Court for the District of New Jersey dated July 23, 1984,

referring all bankruptcy cases filed in the district to the bankruptcy courts.  This is a core

proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).  The District of New Jersey is a proper

venue pursuant to 28 U.S.C. §§ 1408 and 1409.  The following shall constitute findings of fact

and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## II.    PROCEDURAL HISTORY

On March 28, 2007, the Debtor filed a voluntary Chapter 7 bankruptcy petition and was

represented by Dorca I. Delgado-Shafer, his wife at that time.  The Debtor asserts that he is now

divorced from Ms. Delgado-Shafer who is presently suspended from the practice of law in New

Jersey.  In the fall of 2008, Ms. Delgado-Shafer stopped appearing in the Debtor's bankruptcy

case, and the Debtor has proceeded pro se.

The Plaintiffs filed a complaint in the Superior Court of New Jersey, Law Division,

Camden County ("state court action") against Ms. Delgado-Shafer and the Debtor.  Count III of

the complaint, alleging fraud and fraud in the inducement, and count IV of the complaint,

alleging civil conspiracy, specifically name the Debtor as a defendant.  Because of the Debtor's

2

bankruptcy, the Plaintiff's state court action against the Debtor has been stayed. The Plaintiffs

have received a default judgment dated May 15, 2009 in the state court action against

Ms. Delgado-Shafer.

The Plaintiffs' adversary complaint was filed on January 2, 2008, and the Debtor filed an

answer and counterclaim on February 4, 2008. On June 9, 2008, the Debtor's counterclaim was

dismissed. The Debtor filed summary judgment motions in this adversary proceeding on

December 8, 2008 and May 14, 2009, which were both denied. The Debtor attempted to appeal

this Court's denial of his December 8, 2008 summary judgment motion, but the appeal was

dismissed for failure to file a designation of record. On October 15, 2009, the Court held a trial

regarding the Plaintiffs' adversary complaint.

## III.    FINDINGS OF FACT

In 2005, while Elizabeth Rios was employed by Ms. Delgado-Shafer as a secretary, the

Plaintiffs hired Ms. Delgado-Shafer as an attorney to assist them in several real estate

transactions. The Plaintiffs received a check in the amount of $41,843.66 as proceeds from the

sale of property and were advised by Ms. Delgado-Shafer to deposit the check in her attorney

trust account. Mrs. Rios testified that the funds deposited into the trust account were to be used

as a down payment for the purchase of 432 Hartford Road, Mount Laurel, New Jersey (the

"Hartford Road Property") in regard to which the Plaintiffs had procured a mortgage with an

interest rate of 7.5%.

In preparation for the closing scheduled for September 30, 2005 on the Hartford Road

Property, Mrs. Rios approached Ms. Delgado-Shafer on or about September 29, 2005 and

requested the funds that were deposited in the trust account. Although Mrs. Rios had not

3

authorized Ms. Delgado-Shafer to withdraw any of the funds, Ms. Delgado-Shafer informed her

that the funds were not available. Mrs. Rios then notified the lender that her attorney did not

have all of the Plaintiffs' down payment. Since the Plaintiffs were unable to close on

September 30, 2005, their commitment expired, resulting in the need to reapply at which time the

interest rate had increased to 7.95%.

On or about October 6, 2005, Mrs. Rios approached Ms. Delgado-Shafer a second time to

request the funds, and Ms. Delgado-Shafer gave her a check for $29,000. Mrs. Rios also

received another $10,000 in repayment prior to closing on the Hartford Road Property, which

occurred on or about October 10, 2005. The Plaintiffs subsequently retained new counsel and

filed the state court action against Ms. Delgado-Shafer and the Debtor.

The Debtor assisted Ms. Delgado-Shafer by running errands for her, including depositing

checks at the bank. The Debtor testified that on September 11, 2005 he was given an envelope by

Mrs. Rios at Delgado-Shafer's office that contained a check dated September 9, 2005 in the

amount of $35,611.36 made payable to "Cash." The Debtor took the check to the bank, cashed it

by signing and placing his driver's license number on the back, and obtained a cashier's check in

the amount of $35,611.36. He returned to the office with the cashier's check. The Debtor

testified that he did not scheme or conspire with Ms. Delgado-Shafer and that he did not

remember this check until the Office of Attorney Ethics deposed him and asked if the signature

on the back of the check was his, which he did confirm. Further, the Debtor testified that

because he and Ms. Delgado-Shafer were divorcing at the time, he did not care about the money

that came in or went out of Ms. Delgado-Shafer's bank accounts but should have paid more

attention.

4

On September 12, 2005, Ms. Delgado-Shafer sent a letter from her law office to
America's Servicing Company requesting reinstatement of the mortgage on 22 Sunflower Circle,
Lumberton, New Jersey ("Sunflower Property") and enclosing the cashier's check for
$35,611.36.

The Debtor was living at the Sunflower Property in the fall of 2005, which was then
owned by Angel Delgado, his brother-in-law.  The Debtor and Ms. Delgado-Shafer were the
previous owners of the Sunflower Property and continued to live at the Sunflower Property after
it was transferred to Angel Delgado.  The Debtor testified that he was not concerned about the
foreclosure complaint filed during August of 2005 regarding the Sunflower Property because he
just wanted to leave the property due to marital issues.  The Debtor stated that his limited income
was the reason he lived at the Sunflower Property with Ms. Delgado-Shafer as long as he did.

The Debtor was involved in several other transfers of properties before the filing of his
bankruptcy petition.   Regarding the property located at 806 Sedgefield Drive, Mt. Laurel, New
Jersey ("Sedgefield Property"), the Debtor testified that: (1) as of August 31, 2005, he had an
ownership interest in the property and that on that date he transferred the ownership interest over
to his two children, to one in trust and to one outright; (2) the proceeds from the Sedgefield
Property had always been intended for the children's education.  The transfer was not listed on
the Debtor's March 2007 Statement of Financial Affairs ("SOFA").

As to the property at 3199 Federal Street, Camden, New Jersey ("Camden Property"), the
Debtor purchased the Camden Property in October of 2006 and transferred it to Ms. Delgado-
Shafer sometime in 2006, receiving $1.00 of consideration for the transfer.  The Debtor testified
that: (1) the money used for the down payment on the Camden Property was Angel Delgado's

5

money; (2) the Camden Property was always intended to be Ms. Delgado-Shafer's office, with

the Debtor living on the third floor; (3) he purchased the Camden Property so that he could move

his residence away from Ms. Delgado-Shafer who was still staying at the Sunflower Property;

and (4) he did not use any of his own money to purchase the Camden Property. Again, the

Debtor stated that his limited income is the reason he continued to live at the Camden Property.

This transfer was not listed on his SOFA.

Further, the Debtor stated if he had known the bankruptcy rules when he originally filled

out his petition, he probably would have listed the transfers. The Debtor was represented by

Ms. Delgado-Shafer when he filed his bankruptcy petition. Ms. Delgado-Shafer knew of the

transfers but still failed to list them on the Debtor's schedules. The Debtor did sign the SOFA,

which includes a sworn statement that the information contained within the petition is true and

correct under penalty of perjury. The Debtor stated that although the transfers were not listed in

the schedules, all of this information was disclosed at the § 341(a) meeting from which he

obtained a compact disc of the recorded proceeding. Although the Debtor held up a compact disc

at trial, no support for this assertion was admitted into evidence nor was any evidence presented

to contest this assertion. Finally, the Debtor testified that he is not changing his bankruptcy

petition unless he is represented by an attorney because he does not want to be accused of

"fraudulent petitions."

## IV.    DISCUSSION

### A. OBJECTIONS TO DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 727.

One of the main purposes of the Bankruptcy Code is to give debtors a "fresh start." Ins.

Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d 1108, 1113 (3d Cir. 1995). Thus, § 727 "is to be

construed liberally in favor of the debtor." <u>Rosen v. Bezner</u>, 996 F.2d 1527, 1531 (3d Cir. 1993).

The Third Circuit has recognized that "[c]ompletely denying a debtor his discharge, as opposed

to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an

extreme step and should not be taken lightly." <u>Id.</u>  Pursuant to Federal Rule of Bankruptcy

Procedure 4005, "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the

burden of proving the objection." Fed. R. Bankr. P. 4005.  Courts have found that a plaintiff's

burden of proof is measured by the preponderance of the evidence standard.  <u>See, e.g.</u>, <u>Wachovia</u>

<u>Bank, N.A. v. Spitko</u> (<u>In re Spitko</u>), 357 B.R. 272, 301 (Bankr. E.D. Pa. 2006).

    **1.**       **11 U.S.C. § 727(a)(2)(A).**

Although the Debtor transferred the Camden Property from himself to Delgado-Shafer

within one year of the Debtor's bankruptcy filing, the Court finds that the Debtor did not have the

"improper intent" required for a complete denial of his discharge pursuant to § 727(a)(2)(A).

Section 727(a)(2)(A) provides that:

> **(a)** The court shall grant the debtor a discharge, unless--
> **(2)** the debtor, with intent to hinder, delay, or defraud a
> creditor or an officer of the estate charged with custody of
> property under this title, has transferred, removed, destroyed,
> mutilated, or concealed, or has permitted to be transferred,
> removed, destroyed, mutilated, or concealed--
>> **(A)** property of the debtor, within one year before the
>> date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A) (2006).  The Third Circuit has discussed that § 727(a)(2)(A) presents

> an exception to the general rule that a court must grant a debtor
> his discharge; that exception consists of two components: an act
> (i.e. a transfer or a concealment of property) and an improper
> intent (i.e., a subjective intent to hinder, delay, or defraud a
> creditor). The party seeking to bar discharge must prove that <u>both</u>
> of these components were present during the one year period

> before bankruptcy; anything occurring before that one year period
> is forgiven.

Rosen, 996 F.2d at 1531. Here, the Debtor admits to transferring the Camden Property to his

wife within one year of the bankruptcy filing, therefore, the disputed component is whether the

Debtor transferred this property with the intent to hinder, delay, or defraud creditors.

Regarding the required fraudulent intent, "because courts recognize that a debtor will be

reluctant to admit that he was motivated by fraud, they have permitted fraudulent intent to be

inferred from circumstantial evidence or a course of action." Spitko, 357 B.R. at 301 (citing

Thibodeaux v. Olivier (In re Olivier), 819 F.2d 550, 553 (5th Cir. 1987); First Beverly Bank v.

Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986)).   The following nonexhaustive list of

"badges of fraud" have been used by courts as circumstantial factors to determine whether the

intent to defraud has been established by a plaintiff:

> (1) the lack or inadequacy of consideration; (2) the family,
> friendship or close associate relationship between the parties; (3)
> the retention of possession, benefit or use of the property in
> question; (4) the financial condition of the party sought to be
> charged both before and after the transaction in question; (5) the
> existence or cumulative effect of a pattern or series of transactions
> or course of conduct after the incurring of debt, onset of financial
> difficulties, or pendency or threat of suits by creditors; and (6) the
> general chronology of the events and transactions under inquiry.

Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1583-84 (2d Cir. 1983).  "Since actual fraud

may be inferred from circumstantial evidence and the debtors' course of conduct, a court should

consider the totality of the evidence to determine whether transfers . . . were done with [the]

intent to deceive the debtors' creditors." Spitko, 357 B.R. at 302.

Here, the Plaintiffs have met their burden in proving the act of transfer of a property within a year of filing occurred. The Debtor did transfer the Camden Property to his spouse and continued to reside in the property. However, although the property was titled in his name before the transfer, the evidence shows that he paid no consideration for the property. Angel Delgado paid the down payment, and it was intended that the property would be Ms. Delgado-Shafer's office. No evidence was presented by the Plaintiffs to support a conclusion that the Debtor invested anything in the property, that he transferred it with the intent to deceive his creditors, or that he received a benefit from the transfer of the property.

The Court finds based on the totality of the evidence and the Debtor's testimony regarding his intent behind the transfer of the Camden Property that the Debtor did not intend to hinder, delay, or defraud creditors. The Debtor's motive behind purchasing the Camden Property and transferring the Camden Property was to assist his ex-wife and her brother and procure a place to reside outside of the marital home. Ms. Delgado-Shafer advised the Debtor to purchase the Camden Property and transfer it to her, and he did. Therefore, the Court concludes that the Debtor did not have the improper intent required for a denial of the Debtor's discharge pursuant to § 727(a)(2)(A).

   2.      **11 U.S.C. § 727(a)(3).**

Although the Debtor was recalcitrant in providing information to the Trustee regarding his financial condition, the Court will not require the Debtor to provide a justification for lack of adequate recordkeeping nor deny the Debtor's discharge pursuant to § 727(a)(3). Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge, unless–
>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3) (2006).  The Third Circuit has stated that "[t]he purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir. 1992).  The standard articulated by the Third Circuit for a § 727(a)(3) determination is

> whether there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained. Thus, in order to invoke the protection of the bankruptcy court, the debtor must maintain and preserve adequate records.  If the debtor fails to do so, there must be some justification.

Id. at 1230-31 (quotation marks and citations omitted).  Therefore, "to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Id. at 1232.  Although the Court will take judicial notice of the fact that the Chapter 7 Trustee had difficulty obtaining copies of tax returns from the Debtor and that the Debtor has been less than cooperative, these issues have been resolved or abandoned by the Chapter 7 Trustee.  The Plaintiffs themselves have not provided any examples of documents and records that have not been produced by the Debtor which are necessary for the Plaintiffs to ascertain the Debtor's

financial condition.   A discovery period existed before this adversary proceeding went to trial,

and Plaintiffs did not assert that there were any documents necessary to establish the Debtor's

financial condition that were not produced.   The Court does not find at this time that the Debtor

needs to provide a justification for inadequate recordkeeping because the Plaintiffs have not

established that documents were not provided to ascertain the Debtor's financial condition;

therefore, the Debtor's discharge will not be denied pursuant to § 727(a)(3).

      3.     **11 U.S.C. § 727(a)(4).**

The Court finds that the Debtor will not be denied his discharge pursuant to § 727(a)(4) because

the omissions on the Debtor's SOFA, although material, are excusable because of the lack of

assistance the Debtor received from his attorney at the time of filing. Although the Plaintiff's

complaint outlines § 727(a)(4) in its entirety, after reviewing the evidence presented, the Court's

focus will be on § 727(a)(4)(A) because the Plaintiffs have not presented evidence relating to

§§ 727(a)(4)(B)-(D).   Section 727(a)(4) provides:

> (a) The court shall grant the debtor a discharge, unless--
>     (4) the debtor knowingly and fraudulently, in or in
>     connection with the case--
>         (A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).  Section 727(a)(4)(A) "is designed to ensure that the debtor puts

dependable information in the hands of those interested in the administration of the bankruptcy

estate without the need for the trustee or a party in interest to engage in costly, exhaustive

investigations to ferret out the truth concerning the Debtor's financial condition." Strominger v.

Giquinto (In re Giquinto), 388 B.R. 152, 178 (Bankr. E.D.Pa. 2008).  To establish

nondischargeability pursuant to § 727(a)(4)(A), a plaintiff must prove that: "(1) the debtor

knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact."

Scimeca v. Umanoff, 169 B.R. 536, 542 (D.N.J. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994). "A

false statement or an omission on the debtor's schedules or Statement of Financial Affairs, or

made during an examination conducted in connection with the bankruptcy proceedings may

support denial of discharge pursuant to Section 727(a)(4)(A)." Sousa v. Old Republic Nat'l Title

Ins. Co. (In re Sousa), Bankr. No. 05-48815, Adv. No. 06-2319, 2008 WL 302391, at *6 (Bankr.

D.N.J. Jan. 30, 2008). Moreover, "the advice of counsel may provide an excuse for an inaccurate

or false oath." Georges v. Georges (In re Georges), 138 F.App'x 471, 472 (3d Cir. 2005) (citing

In re Topper, 229 F.2d 691, 692-93 (3d Cir. 1956) ("It is entirely understandable that a bankrupt

may be guided by the opinion of his counsel as to what comes within the meaning of the

provisions of the Bankruptcy Act- specifically what shall be included in the Schedules.")).

  Here, the Court notes that the Debtor did not schedule any of the transfers of property that

occurred regarding the Sedgefield Property or the Camden Property on his bankruptcy petition

nor did he include them on his SOFA. These omissions are material because they concern the

potential discovery of assets and the existence and disposition of the Debtor's property.

Although he was represented by an attorney when he filed the petition, the Debtor's attorney was

Ms. Delgado-Shafer, his wife at that time. Ms. Delgado-Shafer had actual personal knowledge of

these transfers and also knew that the information should have been listed on the SOFA but

failed to do so. The Debtor is not an attorney and stated he did not know what should or should

not be included in the schedules and on the SOFA and that if he had known, he would have filled

out the schedules and SOFA differently. The Debtor asserted that he disclosed these transfers at

his § 341(a) meeting and stated that he has not amended his schedules or SOFA to include the

transfers because he needs an attorney to assist him.  He relied on his attorney in completing his

Schedules and SOFA.  Ms. Delgado-Shafer's failure to properly advise the Debtor is an excuse

for the omissions; therefore, the Court finds that the Debtor will not be denied his discharge

pursuant to § 727(a)(4).

4.      **11 U.S.C. § 727(a)(5).**

Although the Plaintiffs have met their initial burden of identifying assets transferred by

the Debtor, the Court determines that the Debtor has satisfactorily explained the loss or

deficiency of the assets for the purposes of § 727(a)(5).  Section 727(a)(5) provides:

> (a) The court shall grant the debtor a discharge, unless--
> (5) the debtor has failed to explain satisfactorily,
> before determination of denial of discharge under
> this paragraph, any loss of assets or deficiency of
> assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(5) (2006).   To establish nondischargeability pursuant to § 727(a)(5), a

plaintiff "has the initial burden of identifying the assets in question by appropriate allegations in

the complaint and showing that the debtor at one time had the assets but they are no longer

available for the debtor's creditors." Riehm v. Park (In re Park), 272 B.R. 323, 332 (Bankr.

D.N.J. 2001) (quotation marks and citations omitted).  If a plaintiff meets the initial burden, "the

burden shifts to the debtor to satisfactorily explain the loss or deficiency." First Am. Title Ins.

Co. v. Coven (In re Coven), Bankr. No. 04-24703, Adv. No. 04-2512, 2007 WL 1160332, *7

(D.N.J. Apr. 17, 2007) (citing Spitko, 357 B.R. at 318-19; Ehle v. Brien (In re Brien), 208 B.R.

255, 258 (B.A.P. 1st Cir. 1997)).

Courts have found that whether the debtor provides a "satisfactory" explanation is determined by

court discretion.  Id. (citing PNC Bank v. Buzzelli (In re Buzzelli), 246 B.R. 75, 117 (Bankr.

13

W.D.Pa. 2000).  A "'court is not concerned with whether the disposition of the assets was proper

under the Bankruptcy Code, but rather only whether the explanation satisfactorily describes what

happened to the assets.'" Spitko, 357 B.R. at 319-20 (citing Sonders v. Mezvinsky (In re

Mezvinsky), 265 B.R. 681, 690 (Bankr. E.D.Pa. 2001)).

Here, the Plaintiffs met the initial burden by presenting information through testimony and

documentation regarding the Debtor's transfers of the Camden Property, the Sedgefield Property,

and the Sunflower Property.  When questioned, the Debtor explained how and why each

transaction occurred.  When he knew, the Debtor explained where the money went from each

transfer and asserted that most of the money went to pay off mortgages that existed on each

property.  For the Sedgefield Property, the Debtor specifically identified that proceeds from that

transfer were intended for his children's education.  The Court finds the Debtor has satisfactorily

explained how the transfers occurred and that his explanations are sufficient to withstand denial

of discharge pursuant to § 727(a)(5).

### 5.    11 U.S.C. § 727(a)(6)

Although the Plaintiffs assert that the Debtor has not complied with all of the orders

issued by this Court, the Plaintiffs have neither presented evidence of this non-compliance nor

shown that the alleged non-compliance was willful or intentional; thus, the Court will not deny

the Debtor's pursuant to § 727(a)(6). The Plaintiffs have not stated questions the Debtor has left

unanswered, if any; therefore § 727(a)(6)(B) and (C) do not apply, and the Court will focus on

§ 727(a)(6)(A).  Section 727(a)(6) provides:

> (a) The court shall grant the debtor a discharge, unless--
> (6) the debtor has refused, in the case–

(A) to obey any lawful order of the
court, other than an order to respond
to a material question or to testify[.]

11 U.S.C. § 727(a)(6)(A) (2006).

Courts have concluded that the term 'refused' found in § 727(a)(6)(A) is distinguishable from the term 'failed,' which is the term used throughout the rest of § 727(a). <u>Raleigh v. Raleigh</u> (<u>In re Raleigh</u>), Bankr. No. 05-25054, Adv. No. 05-2468, 2006 WL 4452839, at *2 (Bankr. D.N.J. Apr. 17 2006). "As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge." <u>Id.</u> (citations omitted).

Although the Plaintiffs allege that the Debtor has not complied with a court order, the Plaintiffs did not present evidence to substantiate this assertion. The Court is aware that the Debtor has at times earlier in the case been less than cooperative with the Chapter 7 Trustee, but the Court is not aware of any existing issues today. Additionally, the Plaintiffs did not present any evidence of the Debtor's failure to comply with the Court's Order, or whether the alleged failure was willful and intentional. Without such proofs, the burden does not shift to the Debtor to explain why he did not comply with the order; therefore the Court concludes that the Plaintiffs have not met their burden for nondischargeability pursuant to § 727(a)(6). Because the Court has concluded that the Plaintiffs have not met their burden of proof to support their objections to the Debtor's discharge or that the Debtor has aptly explained issues that needed further explanation, the Debtor's discharge will not be denied pursuant to §§ 727(a)(2)(A) and (a)(3)-(6).

## B.  EXCEPTIONS TO DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523.

The Third Circuit has held that "[e]xceptions to discharge are strictly construed against

creditors and liberally construed in favor of debtors." Cohn, 54 F.3d at 1113. "[T]he standard of

proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-

the-evidence standard." Grogan v. Garner, 498 U.S. 279, 291 (1991).

### 1.  11 U.S.C. § 523(a)(2)(A).

Because the Plaintiffs did not establish the elements to support an exception to discharge when a

debt is incurred through false pretenses, false representations, or actual fraud, the Plaintiffs'

claim will not be excepted from the Debtor's discharge pursuant to § 523(a)(2)(A). Section

523(a)(2)(A) provides:

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual debtor from
> any debt--
>> **(2)** for money, property, services, or an extension, renewal,
>> or refinancing of credit, to the extent obtained by--
>>> **(A)** false pretenses, a false representation, or actual
>>> fraud, other than a statement respecting the debtor's
>>> or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A) (2006). "This section requires proof of actual fraud, not merely fraud

implied in law." De La Cruz v. Cohen (In re Cohen), 185 B.R. 171, 177 (Bankr. D.N.J. 1994)

(citations omitted). For a debt to be nondischargeable pursuant to § 523(a)(2)(A), a plaintiff

must establish

> (1) that the debtor obtained money, property or services through a
> material misrepresentation; (2) that the debtor, at the time of the
> transaction, had knowledge of the falsity of the misrepresentation
> or reckless disregard or gross recklessness as to its truth; (3) the
> debtor made the misrepresentation with intent to deceive; (4) the
> plaintiff [justifiably] relied on the representation; and (5) that the

16

plaintiff suffered loss, which was proximately caused by the
debtor's conduct.

Id. (citing Trump Plaza Assoc. v. Poskanzer (In re Poskanzer), 143 B.R. 991, 999 (Bankr. D.N.J.

1992)) (other citations omitted).

It is undisputed that the Debtor took the check written by Ms. Delgado-Shafer from her

attorney trust account to the bank, cashed it, obtained a cashier's check, and brought the cashier's

check back to the office.  It is also undisputed that the funds in the account were the Plaintiffs'

funds held in trust.  No evidence has been presented that the Debtor made a representation or

acted in a way which induced the Plaintiffs to advance money, property, or credit to the Debtor.

Since no misrepresentation by the Debtor occurred, the Plaintiffs could not have justifiably relied

upon it.  Therefore, the Plaintiffs did not establish that it was false pretenses, false

representations, or actual fraud by the Debtor that caused their suffered losses, and thus, the

Plaintiffs' claim will not be excepted from the Debtor's discharge pursuant to

§ 523(a)(2)(A).

> **2.      11 U.S.C. § 523(a)(4).**

Because the Plaintiffs have not established that the Debtor was acting in a fiduciary

capacity or that their debt was incurred due to the Debtor's embezzlement or larceny of their

property, the Plaintiffs' claim is not excepted from the discharge pursuant to § 523(a)(4).  Section

523(a)(4) provides:

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual debtor from
> any debt--
>> **(4)** for fraud or defalcation while acting in a fiduciary
>> capacity, embezzlement, or larceny[.]

17

11 U.S.C. § 523(a)(4) (2006).  Under this exception to discharge, a debt will be nondischargeable

if it was incurred by: "(I) fraud or defalcation while acting in a fiduciary capacity; (ii)

embezzlement while acting in any capacity; or (iii) larceny while acting in any capacity." Hatch

v. Hatch (In re Hatch), Bankr. No. 07-11453, Adv. No. 07-214, 2009 WL 3208694, at *5 (Bankr.

E.D.Pa. Sept. 30, 2009).  Because the Bankruptcy Code does not define the terms embezzlement

or larceny, federal common law is used.  Nassau Suffolk Limousine Ass'n v. Jardula (In re

Jardula), 122 B.R. 649, 653 (Bankr. E.D.N.Y. 1990).

The Plaintiffs' complaint asserted that the Debtor committed fraud or defalcation while

acting with a fiduciary duty, embezzlement, or larceny, but because the Plaintiffs do not provide

any evidence that the Debtor had a fiduciary duty to them, the Court will focus on the

embezzlement and larceny analyses under § 523(a)(4).

a.    Embezzlement

The Plaintiffs have not established that they entrusted the Debtor with their property or

that he appropriated such property for his own use; thus, their debt is not excepted from

discharge because of embezzlement by the Debtor pursuant to § 523(a)(4).  Federal case law has

defined the term embezzlement to mean the "fraudulent appropriation of property by a person to

whom such property has been entrusted, or into whose hands it has lawfully come.'" Borchardt v.

Ferrell (In re Ferrell), Bankr. No. 04-30731, Adv. No. 04-1034., 2006 WL 1997423, at * 9

(Bankr. E.D.Pa. June 14, 2006) (quoting Moore v. United States, 160 U.S. 268, 269 (1895)).  "To

prove a debtor committed embezzlement within the meaning of § 523(a)(4), a plaintiff must

establish that: (1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor

appropriated for his own use; and (5) with fraudulent intent." Ginsburg ex rel Vertical Group,

18

Inc. v. Birenbaum (In re Birenbaum), Bankr. No. 05-20640, Adv. No. 05-2506, 2006 WL

1997478, at *8 (Bankr. W.D.Pa. July 7, 2006)); see also Wolstein v. Doctoroff (In re Doctoroff),

133 F.3d 210, 216-17 (3d Cir. 1997). "Fraudulent Intent may be 'determined from the facts and

circumstances surrounding the act.'" Harris v. Dawley, (In re Dawley), 312 B.R. 765, 779

(Bankr. E.D.Pa. 2004) (quoting C & J Car Rental v. Purdy (In re Purdy), 231 B.R. 310, 312

(Bankr. E.D.Mo. 1999)). Here, the Plaintiffs' funds were entrusted to Ms. Delgado-Shafer, not

the Debtor. The evidence establishes that Ms. Delgado-Shafer wrote a check from her trust

account, which held funds on behalf of the Plaintiffs, and directed the Debtor to take the check to

the bank, obtain a cashier's check, and return it to her office, which he did. Ms. Delgado-Shafer

then used the funds for her own purposes. No evidence was presented that the Debtor

appropriated the funds for his own use. Therefore, the Plaintiffs have not established

nondischargeability pursuant to embezzlement by the Debtor.

        b.     Larceny

       Because the initial deposit of the Plaintiffs' funds into Ms. Delgado-Shafer's trust account

was not wrongful, the Plaintiffs claim cannot be excepted from discharge pursuant to larceny by

the Debtor. The term "larceny" is defined by federal case law as "the felonious taking of

another's personal property with the intent to convert it or deprive the owner of the same."

Schlessinger v. Schlessinger (In re Schlessinger), 208 Fed. App'x 131, 133 (3d Cir. 2006).

"Larceny thus requires that the initial appropriation of the property of another be wrongful."

Sullivan v. Clayton (In re Clayton), 198 B.R. 878, 884 (Bankr. E.D.Pa. 1996). Here, the initial

deposit of the funds into the trust account was lawful because the Plaintiffs consented to the

holding of the funds by Ms. Delgado-Shafer in trust; therefore, the Plaintiffs have not established

a felonious taking of their property by the Debtor occurred.  The Plaintiffs' claim against the

Debtor is not excepted from the discharge pursuant to § 523(a)(4) because they have not

established that their debt was incurred due to the Debtor's embezzlement or larceny of their

property.

## IV.    CONCLUSION

After reviewing the pleadings, evidence and testimony presented by the parties, for the

reasons set forth in this opinion, the Court concludes that the Debtor's discharge will not be

denied pursuant to § 727(a)(2)(A) or (a)(3)-(6).  Additionally, the Court finds that the Plaintiffs'

claim against the Debtor will not be excepted from the discharge pursuant to § 523(a)(2) or

(a)(4).

BY THE COURT:

GLORIA M. BURNS
United States Bankruptcy Judge

Dated: March 31, 2010